## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JIMMIE LEWIS                                        CIVIL ACTION

VERSUS                                              NO. 19-13629

DARRYL VANNOY, ET AL.                               SECTION: "T"(1)

## REPORT AND RECOMMENDATION

Petitioner, Jimmie Lewis, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On April 18, 2012, petitioner was convicted of simple burglary and attempted aggravated rape under Louisiana law.[1] On May 1, 2012, he was sentenced on the simple burglary conviction to a term of twelve years of imprisonment and on the attempted aggravated rape conviction to a consecutive term of fifty years of imprisonment without benefit of probation, parole, or suspension of sentence.[2] On May 2, 2013, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3]

The parties agree that petitioner then filed for post-conviction relief on March 12, 2014, which was denied on the merits by the state district court on August 7, 2018.[4] This Court's research reveals that petitioner's related writ applications were likewise denied by the Louisiana

---

[1] Rec. Doc. 11-1, p. 6; Rec. Doc. 11-2, pp. 55-56; Rec. Doc. 11-4, pp. 106-07.
[2] Rec. Doc. 11-1, pp. 6-7; Rec. Doc. 11-4, p. 116.
[3] Rec. Doc. 11-1, pp. 12-25; State v. Lewis, No. 2012 KA 1616, 2013 WL 1858747 (La. App. 1st Cir. May 2, 2013).
[4] Rec. Doc. 3-1, p. 3; Rec. Doc. 11, p. 3. In its response, the state argues that, in an order dated March 19, 2014, "[t]he then presiding judge indicated a denial occurred," but that it was unclear what that denial encompassed. Rec. Doc. 11, p. 3. However, on August 7, 2018, "the current presiding judge at the district level" issued the order expressly denying petitioner's post-conviction claims "on the merits." Id.

First Circuit Court of Appeal on December 26, 2018,[5] and the Louisiana Supreme Court on October 1, 2019.[6]

On or about November 13, 2019, petitioner filed this federal application seeking habeas corpus relief.[7]  The state opposed the application.[8]  Petitioner was given an opportunity to file a reply to the state's response;[9] however, no such reply was filed.

## I.  Timeliness

Despite conceding that "[t]he record shows some confusion with regards to the motion for post-conviction relief,"[10] the state nevertheless still half-heartedly argues that petitioner's federal application is untimely.  However, this Court is unable to assess the validity of that argument because, in violation of the Court's briefing order,[11] the state has failed to submit a full and complete copy of the state court record for this Court's review.  For example, the state court record provided contains no copies of petitioner's post-conviction filings and related rulings, even though the Court must review such documents to determine whether statutory tolling of the limitations period, see 28 U.S.C. § 2244(d)(2), would apply.  Because the state has failed to submit copies of all necessary records as ordered, the Court declines to address the state's timeliness defense and will instead recommend that, as the state alternatively argues, petitioner's claims simply be denied on the merits.[12]

---

[5] State v. Lewis, No. 2018 KW 1369, 2018 WL 6807181 (La. App. 1st Cir. Dec. 26, 2018).

[6] State v. Lewis, 280 So. 3d 132 (La. 2019); Rec. Doc. 3-2, pp. 11-12.

[7] Rec. Doc. 3.

[8] Rec. Doc. 11.

[9] Rec. Doc. 4, p. 2.

[10] Rec. Doc. 11, p. 3.

[11] Rec. Doc. 4.

[12] A federal habeas court may pretermit a ruling on timeliness when it can more easily dispose of a petition on other grounds.  See, e.g., Sokolowski v. Prince, Civ. Action No. 14-110, 2015 WL 631425, at *3 n.28 (E.D. La. Feb. 13, 2015); Gordon v. Cain, Civ. Action No. 12-1884, 2013 WL 3833076, at *2 n.22 (E.D. La. July 22, 2013); Brooks v. McCoy, No. 5:11-HC-2222-F, 2012 WL 3629233, at *4 (E.D.N.C. Aug. 22, 2012); Brian R. Means, Federal Habeas Manual § 9A:7 (2019) ("[A] district court is not required to rule on whether an asserted limitations defense applies if the habeas petition may be denied on simpler grounds.").  In addition, the Court notes that the state concedes that petitioner has exhausted his remedies in the state courts.  Rec. Doc. 11, p. 8.

## II.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words,

4

the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted).  "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief."  Id. at 170.

Further, the Supreme Court has expressly cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  Woodall, 572 U.S. at 417.

### III.  Facts

On direct review, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

On the evening of July 31, 2011, K.B. was home alone in her trailer on Pierre Lane in Ponchatoula.  At about 11:00 p.m., K.B. went to her bathroom to roll

her hair.  As K.B. left the bathroom several minutes later, she saw the defendant in her living room holding her purse.  The defendant had climbed through the window of K.B.'s son's bedroom.  K.B. did not know the defendant personally.  Shocked, she ran for the front door, but the defendant stopped her.  K.B. begged the defendant not to hurt her.  The defendant told her to shut up or he would cut her.  The defendant was holding a yellow box cutter with the blade extended.  The defendant brought K.B. to her bedroom and pushed her on the bed.  He climbed on top of her, holding the box cutter in his right hand near her cheek and covering her mouth with his left hand.  As K.B. struggled and kept pulling the defendant's hand off of her face, the defendant repeatedly told her to shut up or he would cut her.  At some point during the struggle, K.B. knocked the box cutter from the defendant's hand. She told the defendant to take her purse and that he could have whatever he wanted, but to just take it and leave.  When she asked the defendant if he would leave, he replied, "No, I am going to f--k."  In an attempt to create space between herself and the defendant, which might allow her to escape or to grab a knife she had inside a "cubby" on the nightstand, K.B. asked the defendant if she could get a condom. The defendant leaned back for a moment.  K.B. pushed him off of her and ran for the front door, which was open.  The defendant caught up to her and tried to pull her back into the trailer.  K.B. resisted and, as they struggled, the defendant punched her in the face.  She fell down and the defendant ran from her trailer.

K.B. called 911.  She went to the hospital where she was treated for injuries to her face and arm.  K.B. told the police she recognized the defendant from a sex offender notification card she had received in the mail.  The police learned that the defendant lived a few houses away, less than one-tenth of a mile, from K.B.  The defendant was brought to the police station for questioning.  After initially denying any involvement, the defendant admitted entering K.B.'s trailer through a window and being approached by K.B.  The defendant reported that upon seeing K.B., he left.  The defendant did not admit to attacking K.B.  The defendant told the police he never went into K.B.'s bedroom and held her down, and he was not armed with a box cutter.  The police found a yellow box cutter at the foot of K.B.'s bed.

The defendant did not testify at trial.[13]

## IV.  Petitioner's Claims[14]

### A.  Double Jeopardy

Petitioner argues that the Double Jeopardy Clause was violated in the instant case because "both charges was [sic] presented upon the same evidence."[15]   In the state post-conviction proceedings, the Louisiana Supreme Court denied that claim, holding:  "Applicant fails to show a

---

[13] Rec. Doc. 11-1, pp. 13-14; State v. Lewis, No. 2012 KA 1616, 2013 WL 1858747, at *1-2 (La. App. 1st Cir. May 2, 2013).

[14] For ease of analysis, petitioner's claims are discussed in a different order than listed in the petition.

[15] Rec. Doc. 3, p. 4.

double jeopardy violation under <u>Blockburger v. United States</u>, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)."[16]

A double jeopardy claim raises a mixed question of law and fact. Therefore, in assessing this claim, this federal habeas court must defer to that state court decision unless petitioner establishes that it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>See</u> 28 U.S.C. § 2254(d)(1); <u>Carlile v. Cockrell</u>, No. 01-10318, 2002 WL 31319380, at *1 (5th Cir. Oct. 2, 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); <u>Johnson v. Karnes</u>, 198 F.3d 589, 593 (6th Cir. 1999) (same). For the following reasons, petitioner has not made that showing.

The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment. <u>Benton v. Maryland</u>, 395 U.S. 784, 794 (1969); <u>Rogers v. Lynaugh</u>, 848 F.2d 606, 611 (5th Cir. 1988). The United States Supreme Court has explained:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

<u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969) (footnotes omitted), <u>overruled in part on other grounds</u>, <u>Alabama v. Smith</u>, 490 U.S. 794, 802-03 (1989); <u>accord</u> <u>Department of Revenue v. Kurth Ranch</u>, 511 U.S. 767, 769 n.1 (1994).

Petitioner appears to be contending that his case falls within the third category. However, so long as offenses are distinct, it is immaterial for double jeopardy purposes that they arose from the same course of conduct. <u>See, e.g.</u>, <u>United States v. Morgan</u>, 437 F. App'x 354, 355-56 (5th

---

[16] <u>State v. Lewis</u>, 280 So. 3d 132 (La. 2019); Rec. Doc. 3-2, pp. 11-12.

Cir. 2011); <u>Johnson v. Terrell</u>, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995). In determining whether offenses are distinct, the United States Fifth Circuit Court of Appeals has explained:

> We apply the <u>Blockburger v. United States</u>[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense. <u>Blockburger</u> requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not". If either statute contains no element not also found in the other statute, the statutes "fail" the <u>Blockburger</u> test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent". Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The <u>Blockburger</u> inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court. Thus, the question is not whether this violation of [the first statute] also constituted a violation of [the second statute], but whether all violations of the former statute constitute violations of the latter.

<u>United States v. Singleton</u>, 16 F.3d 1419, 1422 (5th Cir. 1994) (emphasis in original) (footnotes omitted).

Here, petitioner was charged with and convicted of simple burglary and attempted aggravated rape. Therefore, this Court must look to how Louisiana criminal law defined those offenses.

Under Louisiana law, "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60 [which defines the offense of aggravated burglary]." La. Rev. Stat. Ann. § 14:62(A).

At the time of the instant offense, Louisiana law defined aggravated rape as:

[A] rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

(5) When two or more offenders participated in the act.

(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

La. Rev. Stat. Ann. § 14:42 (version prior to 2015 amendments).[17]  Louisiana law further provides: " Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."  La. Rev. Stat. Ann. § 14:27(A).

The foregoing statutory definitions make it obvious that simple burglary and attempted aggravated rape are distinct offenses because each contains at least one element missing from the other.  For example, simple burglary requires unauthorized entry of a dwelling, while attempted aggravated rape does not.  On the other hand, attempted aggravated rape requires attempted sexual intercourse, while simple burglary does not.  Accordingly, the requirements of Blockburger are clearly met.

Out of an abundance of caution, the Court further notes that, based on the phrasing of his claim (i.e. that "both charges was [sic] presented upon the same evidence"[18]), petitioner may instead be arguing that his prosecution violated the "same evidence" test utilized for many years by Louisiana state courts in deciding double jeopardy claims.  State v. Frank, 234 So. 3d 27, 29-

---

[17] In 2015, the statute was amended to, *inter alia*, change the name of the offense from "aggravated rape" to "first degree rape."  However, the elements of the offense were unchanged.

[18] Rec. Doc. 3, p. 4.

30 (La. 2017) ("Louisiana has also applied a 'same evidence' test in addition to the <u>Blockburger</u> test."); <u>see also</u> <u>Turks v. Warden, Avoyelles Correctional Center</u>, Civ. Action No. 11-cv-0391, 2014 WL 940554, at *3 (W.D. La. Mar. 10, 2014) ("Louisiana courts often refer to <u>Blockburger</u> but more often employ what is called a 'same evidence test' that is broader in concept than <u>Blockburger</u>."). If that is indeed his argument, it fails for two reasons.

First, Louisiana courts applied the "same evidence" test as a matter of *state* law. *Federal* law simply does not recognize the "same evidence" test. <u>See</u> <u>United States v. Felix</u>, 503 U.S. 378, 386 (1992) ("[O]ur precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation."). Therefore, whether the "same evidence" test was violated would be immaterial for federal habeas corpus purposes. Federal habeas corpus relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983); <u>Brown v. Tanner</u>, Civ. Action No. 11-1102, 2011 WL 4746563, at *4 (E.D. La. Aug. 29, 2011), <u>adopted</u>, 2011 WL 4746104 (E.D. La. Oct. 6, 2011).

Second, in any event, even Louisiana state courts no longer employ the "same evidence" test in deciding double jeopardy claims. In <u>Frank</u>, the Louisiana Supreme Court held:

> Louisiana courts have to some extent, however, viewed <u>Blockburger</u> as a constitutional minimum that is supplemented by a heightened protection against double jeopardy afforded under Louisiana law. That view has never been adequately grounded in any textual difference between this state's and federal constitutional provisions. …
> ….
> … Accordingly, we take this opportunity to make clear that the protections against double jeopardy mandated by the federal constitution, as restated in this state's constitution, fall within the analytical framework set forth in <u>Blockburger</u> and Louisiana courts need only apply that framework in analyzing questions of double jeopardy.

Frank, 234 So.3d at 31-34.[19]

### B. Ineffective Assistance of Counsel

Petitioner also claims that his trial counsel was ineffective.[20]  In the state post-conviction proceedings, the Louisiana Supreme Court denied that claim, holding:  "Applicant … fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[21]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to that state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly

---

[19]  However, out of an abundance of caution, this Court notes that petitioner's double jeopardy claim would fail even under the now-abandoned "same evidence" test for the reasons explained in the state's response in this proceeding. See Rec. Doc. 11, pp. 11-13.
[20]  Rec. Doc. 3, p. 4.
[21]  State v. Lewis, 280 So. 3d 132 (La. 2019); Rec. Doc. 3-2, pp. 11-12.

established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (emphasis added; citations omitted).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).

Mindful of these principles and the AEDPA's deferential standards of review, the Court finds that that relief is not warranted with respect to petitioner's ineffective assistance of counsel claim for the following reasons.

As correctly noted by the Louisiana Supreme Court, the clearly established federal law governing such claims is Strickland v. Washington, 466 U.S. 668 (1984).  Pursuant to Strickland, a petitioner must make two showings to prevail on such a claim: (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  Id. at 697.  A petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthewson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Here, petitioner argues that his counsel was ineffective for failing "to object or file a pretrial motion to quash the bill of information on the basis that the prosecution was barred by the double jeopardy clause."[22] However, as already explained *supra*, the Double Jeopardy Clause simply was not violated in this case. Therefore, any objection or motion claiming a double jeopardy violation would have been meritless. Obviously, counsel is not ineffective for failing to lodge a meritless objection or file a meritless motion. <u>See, e.g.</u>, <u>United States v. Gibson</u>, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); <u>see also</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

For all of the foregoing reasons, it is clear that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme

---

[22] Rec. Doc. 3, p. 4.

Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Jimmie Lewis be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this 27th day of April, 2020.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.